IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LEROY TSOSIE,

    Plaintiff,

v.                                                                                      1:16-cv-00503-LF

NANCY A. BERRYHILL,[1]
Acting Commissioner of the
Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Leroy Tsosie's Motion to Reverse and Remand to Agency for Rehearing with Supporting Memorandum (Doc. 17), which was fully briefed February 13, 2017. *See* Docs. 21, 22, 23. The parties consented to my entering final judgment in this case. Docs. 3, 6, 16. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") failed to properly weigh the March 25, 2014 medical opinion of treating physician Dr. Randolph L. Copeland. I therefore GRANT Mr. Tsosie's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

    **I.**     **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Nancy A. Berryhill, the new Acting Commissioner of Social Security, is automatically substituted for her predecessor, Acting Commissioner Carolyn W. Colvin, as the defendant in this suit. FED. R. CIV. P. 25(d).

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.     **Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or

---

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

2

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III. Procedural History

Mr. Tsosie was born in 1962, earned his GED in 1993, and has past relevant work as a construction worker and construction framer. AR 20, 44, 219, 266–67.[4] Mr. Tsosie filed applications for supplemental security income and disability insurance benefits on August 26, 2011—alleging disability since January 1, 2011 due to a broken left ankle. AR 219–26, 227–30,

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Documents 13-1 through 13-20 comprise the sealed Administrative Record ("AR"). When citing the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

266. The Social Security Administration ("SSA") denied his claims initially on December 2, 2011. AR 80–84. The SSA denied his claims on reconsideration in two undated letters. AR 88–94. Mr. Tsosie requested a hearing before an ALJ. AR 95–98. On January 18, 2013, Dr. Randolph Copeland diagnosed Mr. Tsosie with degenerative disc disease. AR 452. On May 17, 2013, ALJ John Morris held a hearing. AR 29–33. Mr. Tsosie asked for a continuance to allow his representative additional time to prepare, which ALJ Morris granted. AR 32. On July 16, 2014, ALJ Donna Montano held a hearing. AR 34–56. ALJ Montano issued her unfavorable decision on October 31, 2014. AR 7–26.

The ALJ found that Mr. Tsosie met the insured status requirements of the Social Security Act through September 30, 2013. AR 12. At step one, the ALJ found that Mr. Tsosie had not engaged in substantial, gainful activity since January 1, 2011. *Id.* At step two, the ALJ found that Mr. Tsosie suffered from the following severe impairments: status-post left ankle fracture and degenerative disc disease of the lumbar spine. *Id.* At step three, the ALJ found that neither of Mr. Tsosie's impairments, alone or in combination, met or medically equaled a Listing. AR 13. Because the ALJ found that Mr. Tsosie's impairments did not meet a Listing, the ALJ assessed Mr. Tsosie's RFC. AR 14–19. The ALJ found that Mr. Tsosie had the RFC to perform light work, except that he is limited to occasional climbing and crouching. AR 14.

At step four, the ALJ concluded that Mr. Tsosie was unable to perform his past relevant work as a construction worker or construction framer. AR 20. At step five, the ALJ found that Mr. Tsosie could perform unskilled, light jobs that exist in significant numbers in the national economy—such as hand cleaner/polisher, small products assembler, and laundry folder. AR 20–21. Consequently, the ALJ found Mr. Tsosie was not disabled. AR 21. On December 15, 2014, Mr. Tsosie requested review of the ALJ's unfavorable decision by the Appeals Council. AR 6.

On March 24, 2016, the Appeals Council denied the request for review.  AR 1–5.  Mr. Tsosie timely filed his appeal to this Court on May 31, 2016.  Doc. 1.[5]

IV. **Mr. Tsosie's Claim**

Mr. Tsosie raises only one argument for reversing and remanding this case:  (1) the ALJ committed legal error in failing to apply the treating physician rule to the opinion evidence from Rudolph L. Copeland, M.D.  Doc. 17 at 7.  The Commissioner argues in response that Mr. Tsosie is simply asking the Court to reweigh the evidence, and that because a reasonable person could agree with the ALJ's decision, the Court should affirm it.  Doc. 21 at 1–2.  Because I agree that the ALJ erred in analyzing the March 25, 2014 opinion of treating orthopedic surgeon Dr. Randolph Copeland, I grant Mr. Tsosie's motion to remand to give the ALJ an opportunity to remedy her errors.

VI. **Analysis**

   A. **Relevant Law**

In analyzing whether a treating physician's opinion is entitled to controlling weight, the ALJ must perform a two-step process.  "The initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates."  *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir.2003)).  In making this initial determination, the ALJ must consider whether the opinion "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the

---

[5] A claimant has 60 days to file an appeal.  The 60 days begins running five days after the decision is mailed.  20 C.F.R. § 416.1481; *see also* AR 2.  In this case, 65 days after March 24, 2016 was Saturday, May 28, 2016.  The Court was closed on Monday, May 30, 2016 for Memorial Day.  Thus, under FED. R. CIV. P. 6(a)(1)(3)(A), plaintiff had until May 31, 2016 to file his appeal.

5

other substantial evidence in the record." *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)); *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If the opinion meets both criteria, the ALJ must give the treating physician's opinion controlling weight. *Id*. To give anything less than controlling weight, the ALJ must demonstrate with substantial evidence that the opinion (1) is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," or (2) is "inconsistent with other substantial evidence" in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "Under the regulations, the agency rulings, and our case law, an ALJ must 'give good reasons in [the] notice of determination or decision' for the weight assigned to a treating [source's] opinion." *Watkins*, 350 F.3d at 1300 (quoting 20 C.F.R. § 404.1527(d)(2) and citing SSR 96-2p, 1996 WL 374188, at *5; *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003)).

> It is not unusual for a single treating source to provide medical opinions about several issues; for example, at least one diagnosis, a prognosis, and an opinion about what the individual can still do. Although it is not necessary in every case to evaluate each treating source medical opinion separately, adjudicators must always be aware that one or more of the opinions may be controlling while others may not. Adjudicators must use judgment based on the facts of each case in determining whether, and the extent to which, it is necessary to address separately each medical opinion from a single source.

SSR 96-2P (S.S.A. July 2, 1996), 1996 WL 374188, at *2.

If the ALJ does not assign a treating source's opinion controlling weight, step two of the analysis requires the ALJ to apply the six factors listed in the regulations to determine whether a treating source's opinion should be rejected altogether or assigned some lesser weight:

I. **Examining relationship**: more weight is given to the opinion of a source who has examined the claimant than to one who has not;
II. **Treatment relationship**: more weight is given to the opinion of a source who has treated the claimant than to one who has not; more weight is given to the opinion of a source who has treated the claimant for a long time over several visits and who has extensive knowledge about the claimant's impairment(s);

6

III. **Supportability:** more weight is given to a medical source opinion which is supported by relevant evidence (such as laboratory findings and medical signs), and to opinions supported by good explanations;
IV. **Consistency:** the more consistent the opinion is with the record as a whole, the more weight it should be given;
V. **Specialization**: more weight is given to the opinion of a specialist giving an opinion in the area of his/her specialty; and
VI. **Other factors:** any other factors that tend to contradict or support an opinion.

*See* 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Watkins*, 350 F.3d at 1301. As the first two factors make clear, even if an ALJ determines that a treating source opinion is not entitled to controlling weight, the opinion still is entitled to deference. SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996); *see also Watkins* 350 F.3d at 1300.

The ALJ need not explicitly consider and apply each and every factor to each opinion. *Oldham*, 509 F.3d at 1258. "[N]ot every factor for weighing opinion evidence will apply in every case." *Id*. (quoting SSR 06-03p, 2006 WL 2329939, at *5 (Aug. 9, 2006)). However, "the record must reflect that the ALJ *considered* every factor in the weight calculation." *Andersen v. Astrue*, 319 F. App'x 712, 718 (10th Cir. 2009) (unpublished). In addition, the ALJ must "make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (citing *Watkins*, 350 F.3d at 1300–01).

"Explicit findings properly tied to each step of the prescribed analysis facilitate meaningful judicial review" and are required to avoid remand. *Chrismon v. Colvin*, 531 F. App'x 893, 901 (10th Cir. 2013) (unpublished); *see also Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (finding error where "[a]lthough it [was] obvious from the ALJ's decision that he did not give [the treating source's] opinion controlling weight, the ALJ never expressly

stated that he was not affording it controlling weight, nor did he articulate a legitimate reason for not doing so.").

### B. Relevant Medical History

Dr. Copeland treated Mr. Tsosie for nearly four years. *See* AR 328 (first visit on July 19, 2011), 490 (most recent documented visit on May 22, 2015). During this time, Mr. Tsosie's diagnoses and impairments evolved, as did his complaints of pain. Mr. Tsosie first saw Dr. Copeland on July 19, 2011 for a left ankle fracture. AR 328–29. Dr. Copeland saw Mr. Tsosie in the orthopedic clinic for follow up on July 22, 2011, and placed him in a non-weight-bearing short leg cast for six weeks. AR 319. After the cast was removed, Dr. Copeland gave Mr. Tsosie an air cast splint. AR 305, 307. Mr. Tsosie initially reported that his pain was improving, AR 314, but he also reported that "after a day on his feet or excessive walking, his left ankle [would] swell and become painful," AR 302. On October 31, 2011, Gray P. Shaneberger, a physician's assistant working for Dr. Copeland, stated that Mr. Tsosie could "resume normal work activities without restrictions." AR 352.

On April 18, 2012, however, Dr. Copeland diagnosed Mr. Tsosie with tenosynovitis of the left ankle.[6] AR 348. Dr. Copeland noted that Mr. Tsosie "**was** steadily improving but has developed some persistent pain around the lateral aspect of the joint." AR 348 (emphasis added). Dr. Copeland noted that Mr. Tsosie reported continued discomfort with full weight bearing, swelling with long-distance walking, and the ability to walk only about a quarter of a mile before he needed to rest. AR 348–49.

---

[6] Tenosynovitis is "inflammation of the lining of the sheath that surrounds a tendon (the cord that joins muscle to bone)." https://medlineplus.gov/ency/article/001242.htm (last visited August 14, 2017).

8

On July 10, 2012, state agency medical consultant Eileen Brady, M.D. evaluated Mr. Tsosie's claims on reconsideration. AR 62–70, 71–79. The only medically determinable impairment Dr. Brady considered was Mr. Tsosie's left ankle fracture. AR 65, 74. Dr. Brady reviewed Mr. Tsosie's medical records through the April 18, 2012 appointment with Dr. Copeland. AR 64, 73. Based only on the limitations caused by his left ankle, and only on the medical treatment/opinions through April 18, 2012, Dr. Brady found that Mr. Tsosie had the following exertional physical RFC: the ability to occasionally lift and/or carry up to 20 pounds, frequently lift and/or carry 10 pounds, stand/walk (with normal breaks) 6 hours in an 8-hour workday, and sit (with normal breaks) 6 hours in an 8 hour workday. AR 66–67, 75–76. Dr. Brady's exertional RFC is compatible with the regulatory physical exertion requirements for light work.[7] Due to decreased range of motion in his ankle, Dr. Brady also found Mr. Tsosie had some postural limitations—limiting him to occasional crouching, and occasional climbing of ladders, ropes, and scaffolds. AR 67, 76.

On January 18, 2013, Mr. Tsosie returned to Dr. Copeland, this time complaining of lumbar spine pain, which he described as extending to both sides in both the upper lumbar and lower thoracic region, at a pain level of 5 out of 10. AR 453. Dr. Copeland physically examined Mr. Tsosie and observed that he stood stooped forward, and that he had both midline and paraspinous tenderness. *Id.* Dr. Copeland noted that Mr. Tsosie had no palpable defects, normal

---

[7] The physical exertion requirements for light work require

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b).

9

motor strength, and no loss of touch sensation. *Id.* He noted that "[s]traight leg raise testing [was] negative bilateral for any lower limb pain although back pain is produced at approximately 70 [degrees] flexion bilateral." *Id.*[8] Dr. Copeland ordered a CT scan of Mr. Tsosie's thoracic and lumbar spine, which revealed "mild compression deformity of T12 with some anterior wedging," "significant disc degeneration and posterior disk osteophyte complex" resulting in "mild central canal stenosis" at L1-L2, and "posterior disk protrusion resulting in mild spinal canal narrowing" at L5-S1. AR 455. The CT scan also revealed "moderate bilateral neuralfrominal [sic] stenosis[9] at T9 and T10" and "moderate bilateral neural trauma stenoses at L1-L2 and L5-S1." AR 455. Dr. Copeland diagnosed Mr. Tsosie with symptomatic post-traumatic kyphosis[10] (acquired) with possible instability at the L1-2 level, and also with degeneration of the lumbosacral intervertebral disc. AR 452.

On April 23, 2013, Mr. Tsosie saw Dr. Copeland for both his foot pain and his lower back pain, reporting a pain level of 6 out of 10. AR 446. Dr. Copeland physically examined Mr. Tsosie, and his exam findings were nearly identical to those of his January 18, 2013 exam, with

---

[8] "The Straight Leg Raise (SLR) test is a neurodynamic test. Neurodynamic tests check the mechanical movement of the neurological tissues as well as their sensitivity to mechanical stress or compression." https://www.physio-pedia.com/Straight_Leg_Raise_Test (last visited on Aug. 24, 2017). "If symptoms are primarily back pain, it is most likely the result of a disc herniation applying pressure on the anterior theca of the spinal cord, or the pathology causing the pressure is more central. 'Back pain only' patients who have a disc prolapse have smaller, more central prolapses. If pain is primarily in the leg, it is more likely that the pathology causing the pressure on neurological tissue(s) is more lateral." *Id.*

[9] "Spinal stenosis is narrowing of the spinal column that causes pressure on the spinal cord, or narrowing of the openings (called neural foramina) where spinal nerves leave the spinal column." https://medlineplus.gov/ency/article/000441.htm (last visited on Sept. 11, 2017).

[10] Kyphosis is a curving of the spine that causes a bowing or rounding of the back, leading to a hunchback or slouching posture. It is caused by the wedging together of several bones of the spine (vertebrae) in a row. https://medlineplus.gov/ency/article/001240.htm (last visited on Aug. 22, 2017). The ALJ did not discuss Mr. Tsosie's kyphosis at step two, or state whether she found it to be a severe impairment.

the exception of the straight leg raise testing producing back pain at 80 degrees of flexion and only on the left during this exam. AR 446. Dr. Copeland's medical interventions included observation, bracing, and physical therapy. AR 445. Dr. Copeland limited Mr. Tsosie to "[l]ight duty" and advised him to "[l]imit lifting." *Id.*

On June 14, 2013, Mr. Tsosie was treated in the emergency room of Gallup Indian Medical Center, after being found unconscious and intoxicated, with a laceration to the back of his head. AR 430–43.

On July 23, 2013, Mr. Tsosie saw Dr. Copeland for follow up on his back pain, which he stated was constant and was 5 out of 10 on the pain scale. AR 426. Dr. Copeland physically examined Mr. Tsosie, and his exam findings were similar to his previous exams, with the exception of the straight leg test producing back pain at 90 degrees of flexion bilaterally. AR 427. Dr. Copeland, however, entered new medical interventions: "Symptomatic management with muscle relaxants and analgesics. PT consults for brace and also spinal exercises re-written." AR 425. Dr. Copeland prescribed Mr. Tsosie diazepam and acetaminophen with codeine. *Id.* Dr. Copeland referred Mr. Tsosie to see a physical therapist, who fitted him with a lumbosacral brace to address his assessed "difficulty in walking." AR 423.

On October 15, 2013, Mr. Tsosie saw Dr. Copeland for follow up on his lower back pain, and bilateral pain in his shoulders. AR 412. He reported a pain level of 7 out of 10. *Id.* Dr. Copeland conducted a physical exam and noted that Mr. Tsosie had "tenderness in the superior trapezius muscles bilaterally which is aggravated some by neck ROM but not radicular into the upper limbs. Strength seems normal in the upper limbs and no[ ] loss of sensation." AR 412. The rest of Dr. Copeland's exam findings were identical to his July 23, 2013 findings. *Id.*

On March 25, 2014, Mr. Tsosie saw Dr. Copeland for chronic lower back pain and muscle spasms, and for "pain in his posterior lower neck area which radiates out into the trapezius muscle," which he reported had recently worsened. AR 467. Dr. Copeland conducted a physical exam and noted

> tenderness and muscle spasm in the lumbosacral region bilaterally which extends down to the sacrum. There is muscle spasm dressing in the same region. His range of motion is about 15 [degrees] bending laterally both right and left. Extension is only 5 [degrees] and flexion about 60 [degrees]. The neck is tender in the paraspinous muscles of the lower half of the neck and his tenderness extending out into the trapezius muscle almost to the shoulder. Some muscle tightness is noted in this region. The range of motion of the neck is full and range of motion does not seem[ ] to greatly aggravate the symptoms. Strength in the upper limbs appears to be normal. [There] is no loss of sensation on the current exam to touch testing.

AR 467. At this visit, Dr. Copeland prescribed a lumbosacral orthosis, described as "a high brace extending up to proximally the mid thoracic area down to the sacrum." AR 470; *see also* AR 463. After this visit, Dr. Copeland noted that Mr. Tsosie had the following limitations:

> CAN RESUME MODIFIED OCCUPATION: 25-Mar-2014
> Patient is only suited for very light work due to back and neck pain.
> * No pushing, pulling, or lifting greater than 20 lbs.
> * No prolonged standing or walking.
> * No prolonged bending, stooping, twisting, s[i]itting, or driving.
> * No overhead lifting activities
> * No running, jumping, climbing, squatting, hunching, crawling, or twisting.

AR 464.

Dr. Copeland continued to treat Mr. Tsosie after the ALJ issued her decision on October 31, 2014, and his condition continued to deteriorate. Cervical spine x-rays on April 24, 2014 showed

> a curve in the cervical and upper dorsal regions of the spine in the frontal projection[;] [n]arrowing of the C5-C6 and C6-C7 interspaces with anterior osteophyte formation and mild posterior osteophyte formation at both levels. There is some cervical-dorsal region apophyseal joint degenerative changes suspected.

AR 504. In an assessment dated May 22, 2015, Dr. Copeland diagnosed Mr. Tsosie with the following: degeneration of the intervertebral disc, cervical spine; osteoarthritis of the spine, both lumbar and cervical; bilateral trochanteric bursitis and chronic hip extensor strain; degeneration of the intervertebral disc, lumbar; and symptomatic kyphosis of the thoracic spine. AR 492. Dr. Copeland stated that Mr. Tsosie has "moderately severe spinal disease complicated by limited coping mechanisms." AR 492. Dr. Copeland also reiterated on March 26, 2015 that Mr. Tsosie was "[o]nly suited for very light activity due to back and neck pain." AR 509.[11]

### C. The ALJ failed to conduct a proper treating physician analysis.

Here, the ALJ committed legal error in the first step of the treating physician analysis—determining "whether it is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Krauser*, 638 F.3d at 1330. The ALJ did not analyze whether Dr. Copeland's April 23, 2013 opinion limiting Mr. Tsosie to "light duty" with limited lifting was entitled to controlling weight. Nor did the ALJ analyze whether Dr. Copeland's March 25, 2014 opinion limiting Mr. Tsosie to "very light work" due to back and neck pain was entitled to

---

[11] After the ALJ issued her decision, Mr. Tsosie requested review by the Appeals Council, and submitted medical records from July 23, 2014 through July 13, 2015. AR 479. New evidence submitted to the Appeals Council becomes a part of the administrative record for the purposes of evaluating the Commissioner's decision for substantial evidence. *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003). The regulations specifically require the Appeals Council to consider evidence submitted with a request for review if the additional evidence is (1) new, (2) material, and (3) related to the period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970 (b); *Threet*, 353 F.3d at 1191. Mr. Tsosie does not challenge the manner in which the Appeals Council addressed the newly submitted evidence. The Appeals Council accepted the evidence and made it part of the record. AR 4. Although not definitively resolved by the Tenth Circuit, *Krauser v. Astrue* suggests that "when the Appeals Council accepts additional evidence, that is 'an implicit determination [that it is] . . . qualifying new evidence,' requiring the Appeals Council to consider it and this court to include it in our review of the ALJ's decision, without separate consideration of the requirements for qualification." *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011). Neither party challenges the addition of this evidence to the record.

controlling weight. Indeed, there is no indication that the ALJ applied the treating physician rule to either of Dr. Copeland's opinions. This is legal error.

First, the ALJ did not analyze whether Dr. Copeland's April 23, 2013 opinion was entitled to controlling weight. Instead, the ALJ merely stated that she gave Dr. Copeland's April 23, 2013 opinion—which released claimant to light duty with limited lifting—significant weight "since it is consistent with the record as a whole, including the objective medical findings and the claimant's medical treatment." AR 16–17. The ALJ appears to have weighed the July 10, 2012 opinion of Dr. Brady—a non-treating/non-examining consultant, *see* AR 62–79—in the same manner. The ALJ gave Dr. Brady's opinion "significant weight" because it was "consistent with the record as a whole, including the claimant's treatment records and his medical treatment." AR 15. There is nothing in the ALJ's opinion indicating that she analyzed Dr. Copeland's April 23, 2013 opinion under the treating physician rule, or whether it was entitled to controlling weight. Instead, the ALJ weighed Dr. Copeland's April 23, 2013 opinion using the same rubric she applied to the other medical opinions. *See* 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6) (listing supportability and consistency as factors used to analyze all medical opinions). Plaintiff does not argue that the ALJ erred in weighing Dr. Copeland's April 23, 2013 opinion, and this error is likely harmless. The Court only notes the ALJ's failure to apply the treating physician rule to this opinion to illustrate that the ALJ failed to apply the treating physician rule to any of Dr. Copeland's opinions.

Second, and more importantly, the ALJ failed to analyze whether Dr. Copeland's March 25, 2014 opinion was entitled to controlling weight. In assessing Dr. Copeland's March 25, 2014 opinion, the ALJ stated the following:

> Dr. Copeland opined on March 25, 2014 that the claimant is suited for "very light work" due to back and neck pain. He concluded that the claimant should perform

14

> no pushing, pulling, or lifting greater than 20 pounds; no prolonged standing or walking; no prolonged bending, stooping, twisting, sitting, or driving; no overhead lifting activities; and no running, jumping, climbing, squatting, hunching, crawling, or twisting (Exhibit 14-F, p.4).
>
> I give Dr. Copeland's assessment of a 20-pound lifting, pushing, and pulling limitation, significant weight, since it is consistent with the record as a whole, including the objective medical findings, the prior opinions of Dr. Copeland and the State agency medical consultant, and the claimant's medical treatment. However, I give limited weight to his conclusions that the claimant can perform no prolonged standing or walking; no climbing, squatting, crawling, or twisting; and no overhead reaching. I determine that the claimant's limitation on standing and walking can be accommodated within the normal breaks (morning, lunch, and afternoon) in an eight-hour workday. Dr. Copeland's opinion is inconsistent with his earlier opinion that the claimant can perform "light duty" with limitations only on lifting (Exhibit 12-F p.37). In addition, his opinion is inconsistent with findings of negative straight-leg raising and normal sensory and motor function. Moreover, Mr. Tsosie has not consistently been compliant with medications, physical therapy, or use of his back brace.

AR 18.

The Commissioner argues that it was enough for the ALJ to "implicitly" decline to give Dr. Copeland's March 25, 2014 opinion controlling weight. Doc. 21 at 8. I disagree. Unlike the case on which the Commissioner relies, the Court cannot "tell from the decision that the ALJ declined to give controlling weight to [the treating physician's] opinion." *Mays v. Colvin*, 739 F.3d 569, 575 (2014). While the ALJ did discuss the consistency of Dr. Copeland's March 25, 2014 opinion, consistency is a factor used to weigh all medical opinions. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Even if the Court were to agree that the ALJ implicitly declined to give Dr. Copeland's March 25, 2014 opinion controlling weight, there is no indication that the ALJ then applied the factors listed in the regulations to determine whether Dr. Copeland's opinion should be rejected altogether or assigned some lesser weight. The Court simply does not know whether the ALJ considered the lengthy examining and treating relationship between Mr. Tsosie and Dr. Copeland, the supportability of Dr. Copeland's

15

opinions, or Dr. Copeland's specialty, among other factors, in deciding to give "limited weight" to aspects of Dr. Copeland's March 25, 2014 opinion. *See* 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6). Because the ALJ did not explicitly conduct a treating physician analysis, it is simply unclear from the ALJ's decision that she applied the treating physician rule at all. "Explicit findings properly tied to each step of the prescribed analysis facilitate meaningful judicial review" and are required to avoid remand. *Chrismon v. Colvin*, 531 F. App'x at 901 (10th Cir. 2013) (unpublished). Remand is therefore appropriate.

### D. The ALJ's decision to give Dr. Copeland's March 25, 2014 opinion less than controlling weight is not supported by substantial evidence.

Even if the Court could determine that the ALJ implicitly declined to give Dr. Copeland's March 25, 2014 opinion less than controlling weight, remand still is required because the ALJ failed to support her decision with substantial evidence. To give Dr. Copeland's opinion anything less than controlling weight, the ALJ was required to demonstrate with substantial evidence that the opinion (1) is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," or (2) is "inconsistent with other substantial evidence" in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The Commissioner argues that the ALJ rejected Dr. Copeland's March 25, 2014 opinion because it was not well supported and was inconsistent with the objective evidence. Doc. 21 at 9. I disagree. The ALJ did not analyze whether Dr. Copeland's March 25, 2014 opinion was well-supported by medically acceptable clinical and laboratory diagnostic techniques. The ALJ noted only the following purported inconsistencies:

> Dr. Copeland's opinion is inconsistent with his earlier opinion that the claimant can perform "light duty" with limitations only on lifting (Exhibit 12-F p.37). In addition, his opinion is inconsistent with findings of negative straight-leg raising and normal sensory and motor function. Moreover, Mr. Tsosie has not

consistently been compliant with medications, physical therapy, or use of his back brace.

AR 18. However, for the reasons discussed below, these purported inconsistencies do not constitute substantial evidence.

Although the ALJ discounted Dr. Copeland's March 25, 2014 opinion on the basis that the opinion is inconsistent with his earlier April 23, 2013 opinion, substantial evidence does not support this assertion. The ALJ relied on the opinion of Dr. Brady and on Dr. Copeland's April 23, 2013 opinion in determining that Mr. Tsosie had the RFC to "perform light work, except that he is limited to occasional climbing and crouching." AR 16. The RFC the ALJ adopted is identical to Dr. Brady's RFC assessment of July 10, 2012. Dr. Brady, however, only addressed the limitations caused by Mr. Tsosie's ankle injury; she completed her assessment before Mr. Tsosie was diagnosed with degenerative disc disease of the lumbar spine. In contrast, the ALJ found at step two that Mr. Tsosie had two medically determinable impairments—status-post left ankle fracture and degenerative disc disease of the lumbar spine—and "in assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe.*" *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (emphasis in original) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)).

Further, the ALJ's assertion that Dr. Copeland's March 25, 2014 assessment is "inconsistent" with his April 23, 2013 assessment is an argument based on the logical fallacy of false equivalence. Mr. Tsosie's condition was not static, and his pain level and medical diagnoses changed throughout the course of his treatment. Dr. Copeland issued his April 23, 2013 assessment, to which the ALJ gave significant weight, only three months after Mr. Tsosie first complained of lower back pain, and well before he developed chronic neck and shoulder pain, and muscle spasms. *See* AR 412, 464–69. In relying on Dr. Brady's July 10, 2012

assessment and Dr. Copeland's April 23, 2013 assessment, the ALJ failed to consider the progression of Mr. Tsosie's diagnoses and treatment. *See Harris v. Sec'y of Health & Human Servs.*, 821 F.2d 541, 544 (10th Cir. 1987) (finding "[t]he ALJ was not justified in discounting the views of the treating physician as to the claimant's deteriorating condition and instead relying on the treating physician's earlier expectation that the claimant would be able to return to work that did not require heavy lifting.")

Dr. Copeland issued his March 25, 2014 assessment after treating Mr. Tsosie's chronic lower back pain for approximately 14 months, and after Mr. Tsosie developed neck and shoulder pain with muscle spasms. In fact, Dr. Copeland stated in his March 25, 2014 assessment that Mr. Tsosie was "only suited for very light work **due to back and neck pain**." AR 464 (emphasis added). Given the fact that Mr. Tsosie's condition was not static, and his diagnoses continued to evolve, comparing Dr. Copeland's March 25, 2014 to his April 23, 2013 opinion is like comparing apples to oranges. The fact that the opinions differ is not evidence that they are inconsistent; it is merely evidence that, in Dr. Copeland's opinion, Mr. Tsosie's condition deteriorated in the 14 months between the two opinions.

The other reason the ALJ gave for finding Dr. Copeland's March 25, 2014 opinion inconsistent—that "his opinion is inconsistent with findings of negative straight-leg raising and normal sensory and motor function," AR 18—also does not constitute substantial evidence. Mr. Tsosie argues that, in making this statement, the ALJ impermissibly rendered "her own medical analysis" and "failed to recognize that Dr. Copeland knew this information when he provided his assessment." Doc. 17 at 9–10 (citing *Kemp v. Bowen*, 816 F.2d 1469 (10th Cir. 1987)). I agree.

Although Dr. Copeland consistently noted that, while Mr. Tsosie did not experience lower limb pain during the straight leg raise tests, he did experience back pain during the tests.

*See* AR 412, 427, 446, 453, 467, 507; *see also* n.8, *supra*. Dr. Copeland limited Mr. Tsosie to very light work due to back and neck pain, not lower limb pain. *See* AR 464. "While the ALJ is authorized to make a final decision concerning disability, [s]he cannot interpose [her] own 'medical expertise' over that of a physician, especially when that physician is the regular treating doctor for the disability applicant." *Kemp*, 816 F.2d at 1476 (internal citations omitted). In addition, "[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*" *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (internal citation omitted) (emphasis in original).[12] The ALJ's statement that Mr. Tsosie "has not consistently been compliant with medications, physical therapy, or use of his back brace" (AR 18) may be a factor in discrediting Mr. Tsosie's reports of pain, but it is not the contradictory medical evidence needed to reject the limitations in Dr. Copeland's March 25, 2014 opinion.

The Court finds the reasons the ALJ proffered for finding Dr. Copeland's March 25, 2014 opinion inconsistent do not constitute substantial evidence. Thus, the ALJ's decision to reject Dr. Copeland's more recent treating physician opinion is not supported by substantial evidence. On remand, the ALJ must consider the progression of Mr. Tsosie's disease and symptoms in assessing Dr. Copeland's opinions and ultimately in determining Mr. Tsosie's RFC.

---

[12] While not raised in the briefing, the Court notes that the ALJ did not fully analyze Mr. Tsosie's complaints of pain. The Court notes that "the absence of an objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain, but a lack of objective corroboration of the pain's severity cannot justify disregarding those allegations." *Luna v. Bowen*, 834 F.2d 161, 165 (10th Cir. 1987); *see also* 20 C.F.R. § 404.1529(c)(2).

## VI. Conclusion

The ALJ erred by failing to apply the treating physician rule, and by failing to support her findings of inconsistency with substantial evidence. The Court remands so that the ALJ can remedy these errors.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 17) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent